**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

INFORMED CONSENT ACTION NETWORK,

Plaintiff,

v.

NATIONAL CANCER INSTITUTE, *et al.*,

Defendants.

Case No. 1:24-cv-279 (JMC)

---

**MEMORANDUM OPINION AND ORDER**

Informed Consent Action Network filed a Freedom of Information Act (FOIA) request seeking information from the National Cancer Institute related to an article that was published in and then retracted by a medical journal. After conducting a search, the agency withheld under FOIA's Exemption 4 all of the responsive records it located. Informed Consent filed this lawsuit, challenging the agency's conclusion that Exemption 4 applied, along with the adequacy of its search and its analysis as to the segregability of the records. The Court grants summary judgment to the agency as to the adequacy of its search but denies summary judgment to both sides as to the agency's withholdings under Exemption 4. Because the agency has not adequately explained the basis for its knowledge of the medical journal's privacy practices, the Court cannot yet determine whether the withheld records are confidential. The Court will allow the agency to file additional evidence and allow both sides another opportunity to make their case on confidentiality.[1]

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

1

## I.    BACKGROUND

In April 2023, Informed Consent submitted a FOIA request to the National Cancer Institute. *See* ECF 16-2 at 1. The organization's request targeted conversations related to a scientific article that was published in a journal and later retracted. *See* ECF 16-1 at 6–7 (discussing background of request). Specifically, Informed Consent asked for:

> (1) All email communications between Eric O. Freed and Oliver Schildgen from August 20, 2021 through May 31, 2022.
>
> (2) All email communications sent or received by Eric O. Freed containing "Jiang" AND any of the following terms:
>    1.   paper
>    2.   expression
>    3.   concern
>    4.   retract*
>
> * = Boolean search of term

ECF 1-4 at 7; *see also* ECF 16-2 at 2.

The National Institute of Health (NIH)—of which the National Cancer Institute is a component, *see* ECF 15-3 ¶ 4—conducted a search and identified 490 pages of responsive records. *See* ECF 16-2 at 4 (undisputed that at least 490 pages of records were found). The agency withheld all of those records. *See id.* Its view was that nearly all of the information was covered by FOIA's Exemption 4. *See id.* That exemption applies to "trade secrets and commercial or financial information obtained from a person" that is "privileged or confidential." 5 U.S.C. § 552(b)(4). Informed Consent appealed that decision through the agency's administrative process. *See* ECF 1-4 at 2–5. The agency adhered to its position that Exemption 4 applied, explaining that the withheld records "include information that reflects the editorial review processes of" a non-governmental "publisher of open access scientific journals" and "the processes and procedures" that publisher "uses to determine whether an article should be retracted." ECF 16-1 at 31. And because the agency

was of the view that, after redacting the portions of the records covered by Exemption 4, the remaining records were "unintelligible," it withheld all 490 pages in full. ECF 15-3 ¶ 14–15.

Informed Consent then filed this lawsuit. *See* ECF 1. In its complaint, the organization alleged that the agency improperly withheld the records under Exemption 4. *See* ECF 1 ¶¶ 14–16. Informed Consent also asked the Court to order the agency to conduct another search for responsive records, to waive the organization's fees for its request, and for attorneys' fees. *See id.* at 4–5.[2] After the agency answered, the Court set a briefing schedule and the parties filed cross motions for summary judgment. *See* ECF 15; ECF 16.

## II.      LEGAL STANDARD

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). "The agency is entitled to summary judgment only if it shows beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents." *Aguiar v. DEA*, 865 F.3d 730, 738 (D.C. Cir. 2017). Likewise, an "agency withholding responsive documents from a FOIA release bears the burden of proving the applicability of claimed exemptions." *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009).

---

[2] In its motion for summary judgment, Informed Consent does not address its claim that it is entitled to a fee waiver. *Compare* ECF 1 ¶¶ 19–22, *with* ECF 16-1 at 2 (table of contents). The Court therefore does not address that claim here.

III.    ANALYSIS

The Court first considers whether the agency conducted an adequate search for responsive records and concludes that it did. The Court then turns its attention to the agency's withholding of records under Exemption 4. Although the Court is satisfied that the records are "commercial" and were "obtained from a person," deficiencies in the agency's declaration leave the Court unable to determine whether the withheld records are "confidential." 5 U.S.C. § 552(b)(4). The agency has therefore not yet justified its decision to withhold the records under Exemption 4.

### A. The agency conducted an adequate search.

"To prevail on summary judgment, an agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Reps. Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017). The agency has made that showing. Informed Consent requested "email communications" between two people during a particular time period, along with "[a]ll email communications sent or received" by one of those two people in the same time period containing "Jiang" and any of four specific terms. ECF 16-2 at 2. The agency's declarant explained the steps the agency took to search for those records: It searched the "email account" of the person who would have either sent or received all of the responsive "email communications." ECF 15-3 ¶ 13. If anything, that search was overinclusive, because the agency looked for all emails in the relevant time period including the word "Jiang," not only the emails that included that word and one of the other four specific terms. *See id.* And the agency then double-checked its work by having the individual whose email account was searched "confirm[]" that there were no additional records by searching his inbox again using the relevant search terms. *See id.*

The agency has therefore adequately demonstrated that it conducted a reasonable search. Its declaration "set[s] forth the search terms" used and "the type of search performed"—a search

4

of the relevant email inbox. *Reps. Comm.*, 877 F.3d at 402. And the search the agency has described was "reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999). Indeed, given that Informed Consent was seeking email communications to and from a particular individual, it is hard to imagine what else the agency could do outside of searching that individual's inbox for the relevant emails.

Informed Consent raises a handful of objections to the agency's description of its search, but its arguments are misplaced. The organization complains that the agency's declaration does not identify "who . . . conducted the search" or "reviewed all potentially responsive" records. ECF 19 at 11. But the crucial question is not who "was assigned" to conduct the search; it is what "type of search [was] performed" and whether that search was "reasonably calculated to uncover all relevant documents." *Aguiar*, 865 F.3d at 738–39. Nor is there anything wrong with the agency's supposed failure to identify "any systemic approach to document location." ECF 19 at 11. "The adequacy of an agency's search . . . is dependent upon the circumstances of the case," and there is no reason to think that a "systemic approach" is required in a case where a FOIA requester is seeking email communications that can all be found in a single email inbox. *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); ECF 19 at 11. No more successful is Informed Consent's conclusory assertion that the declaration does not provide "enough information" to allow it to "challenge the procedures utilized." ECF 19 at 11. The declaration is "reasonably detailed" and provides "ample information about the search strateg[y] used"—listing where the agency searched and what search terms it used. *Nat'l Ass'n of Crim. Def. Laws. v. Fed. Bureau of Prisons*, No. 18-cv-2399, 2025 WL 3240789, at *3, *5 (D.D.C. Nov. 20, 2025). Contrary to Informed Consent's suggestion, then, *see* ECF 16-2 at 3, there is no need for discovery and the agency has demonstrated that it conducted an adequate search.

**B. The agency has not yet met its burden to justify withholding under Exemption 4.**

The agency relied exclusively on Exemption 4 to withhold the responsive records. *See* ECF 15-3 ¶¶ 11–12. Under that exemption, agencies can withhold "commercial or financial information obtained from a person" that is "privileged or confidential." 5 U.S.C. § 552(b)(4). To justify its withholding, the agency "must establish that the[se] records are (1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential." *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 108 (D.D.C. 2019). The agency has satisfied the first two criteria but has not yet put forward evidence based on personal knowledge that establishes the records are confidential. The Court therefore denies both motions without prejudice.

**1. The records are commercial.**

The withheld records "are related to the peer review processes of" a scientific journal. ECF 15-3 ¶ 14. In particular, the records "reflect[] the editorial review process" of the "private company" that publishes that journal and the "processes and procedures" the company "uses to determine whether an article should be retracted." *Id.* ¶¶ 16–17. That information is "commercial in and of itself." *Citizens for Resp. & Ethics in Wash. v. DOJ* (*CREW*), 58 F.4th 1255, 1263 (D.C. Cir. 2023). It "reveal[s]" the publisher's "basic commercial operations," *id.*—how it conducts "post-publication investigation[s]" and decides whether to issue a retraction, *see* ECF 15-3 ¶¶ 16–17.[3] For the publisher, that information is akin to "manufacturing processes." *CREW*, 58 F.4th at 1263. It reveals an important aspect of how the journal makes its editorial decisions,

---

[3] Unlike its discussion of the publisher's confidentiality practices, *see infra* 8–10, the declaration does sufficiently demonstrate the declarant's personal knowledge of the withheld records themselves. *See* ECF 15-3 ¶ 3 (declarant attesting that they "reviewed all documents at issue" "in the course of performing [their] official duties"). If anything, the contrast between the basis for the declarant's knowledge of the records themselves on the one hand—which, in turn, provides sufficient evidence to establish that the records are commercial—and lack thereof for the publisher's confidentiality practices on the other, illustrates what the personal knowledge requirement demands in FOIA cases. *See Emuwa v. U.S. Dep't of Homeland Sec.*, 113 F.4th 1009, 1016 (D.C. Cir. 2024) (explaining that Circuit has "demanded further detail" when the information at issue "lack[s] [a] connection" to the "declarant's ordinary official duties").

and those decisions, in turn, determine what product the publisher puts out into the world. Because the withheld records "pertain[] to the" publisher's "exchange of goods or services"—its publication of the journal—the records are commercial. *Id.*

### 2. The records were obtained from a person.

Only records "obtained from a person" are covered by Exemption 4. 5 U.S.C. § 552(b)(4). FOIA defines a person to "include[] an individual, partnership, corporation, association, or public or private organization other than an agency." *Id.* § 551(2). The "key inquiry" in determining whether information was "obtained from a person" or instead "generated by the federal government" is "who the source of the information was in the first instance, and not necessarily who created the particular document." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.* (*EPIC*), 928 F. Supp. 2d 139, 147 (D.D.C. 2013).

At first blush, those requirements do not map onto this case neatly. The withheld records "consist of communications between journal editorial staff and authors," ECF 15-3 ¶ 14, all of whom sound like someone "other than an agency," 5 U.S.C. § 551(2). But one of the participants in the communications wore two hats: He was both an employee at the National Cancer Institute and the editor of the journal. *See* ECF 16-1 at 6–7 (discussing Eric Freed's roles).[4] Latching onto that quirk of the case, Informed Consent argues that the "material" sent by this individual "does not qualify for the exemption." *Id.* at 25.

Exactly because this person was wearing these two hats, however, even the messages he sent were "obtained from a person." 5 U.S.C. § 552(b)(4). As an editor of the journal, this individual's communications reflect the "processes and procedures" the publisher "uses to

---

[4] Informed Consent directed the Court's attention to this person's biography on the agency's website. *See* ECF 16-1 at 7 n.6 (citing *Eric O. Freed*, Nat'l Inst. of Health, https://perma.cc/QQ8Z-6XP3). Because that biography was "posted on [an] official public website[] of [a] government agenc[y]," the Court can take judicial notice of it. *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022).

7

determine whether an article should be retracted." ECF 15-3 ¶ 16. Indeed, in the emails the editor was sending he was engaged in and discussing those very processes and procedures. *See id.* ¶ 17 ("The records include communications about" the publisher's "editorial process and post-publication investigation."). This case therefore looks something like those in which the Circuit has held that a report "produced by" an agency can include information "obtained from an outside party" if "information supplied by" that outside party "could be extrapolated" from the report. *Gulf & W. Indus., Inc. v. United States*, 615 F.2d 527, 529–30 (D.C. Cir. 1979); *see also Flyers Rts. Educ. Fund, Inc. v. FAA*, 71 F.4th 1051, 1056–57 (D.C. Cir. 2023) (discussing this rule). Even though an agency employee did produce some of the withheld communications, it is possible to "extrapolate[]" the journal's processes and procedures from those communications. *Gulf & W. Indus.*, 615 F.2d at 530. That's because that same government employee is also an editor at the journal and his communications reflect the journal's "processes and procedures." ECF 15-3 ¶ 16. All of the records, including those generated by this government employee, were therefore "obtained from a person." 5 U.S.C. § 552(b)(4).

3. **The Court cannot yet determine whether the records are confidential.**

While the agency has demonstrated that Exemption 4's first two requirements are satisfied, it has not yet demonstrated that the records are confidential. In its declaration, the agency says that the publisher "follows guidance from the Committee on Publication Ethics" and the "International Committee of Medical Journal Editors." ECF 15-3 ¶ 18. And, the declarant goes on, that guidance "specif[ies] that the confidential treatment of author manuscripts, review processes, and related material is a fundamental aspect of scientific publishing." *Id.* If that is true, the agency may well be right that the publisher treats the sort of editorial discussions that were withheld as confidential.

The problem, however, is that the declarant has not offered any explanation for the basis of their knowledge about the third-party's practices related to confidentiality.

"An affidavit or declaration used to support . . . a motion" for summary judgment "must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4). "To be sure, . . . FOIA declarants" satisfy that requirement when they "rely on information obtained through inter-agency consultation." *Humane Soc'y of U.S. v. Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d 34, 44 (D.D.C. 2019); *see also Emuwa v. U.S. Dep't of Homeland Sec.*, 113 F.4th 1009, 1016 (D.C. Cir. 2024). But it is unclear if, in describing the publisher's confidentiality practices, the declarant is "rely[ing] on information obtained from [their] subordinates in the course of performing their official duties." *Emuwa*, 113 F.4th at 1016; *see* ECF 15-3 ¶¶ 17–19 (no explanation of how declarant knows about publisher's treatment of records). And while courts do generally allow FOIA declarants to relay information about internal agency goings on of which the declarant might not have personal knowledge, they have not extended that same rule to declarations that relay the practices of "private third-parties." *Farm Lab. Org. Comm. v. U.S. Dep't of Lab.*, No. 20-cv-645, 2025 WL 2105566, at *4 (D.D.C. July 28, 2025) (collecting cases addressing related hearsay issue). That makes good sense. Where the declarant is describing the practices of a third-party, rather than the agency in which they work, there is a "seeming lack of connection between the information and the declarant's ordinary duties." *Emuwa*, 113 F.4th at 1016. In these circumstances, the Court cannot determine whether the records are commercial absent more information about the basis for the declarant's knowledge of the publisher's practices, or, alternatively, a declaration from the publisher itself attesting to those practices. *Cf. Pub. Citizen v. U.S. Dep't of Agric.*, No. 21-cv-1408, 2022 WL 3139003, at *2 (D.D.C. Aug. 5, 2022) (describing decision holding that agency

9

"could have, and probably should have, obtained sworn declarations" from the relevant "third-party").

Because the Court cannot yet determine whether the withheld records are confidential, it will deny both motions and leave it to the agency to come forward with "further affidavits" justifying its withholding. *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir. 1998). That evidence will shed light on the foreseeable harm analysis, so the Court reserves that issue for future proceedings. The same goes for any issues related to segregability.[5] *See Inst. for Energy Rsch. v. FERC*, No. 22-cv-2114, 2023 WL 6121878, at *15 n.5 (D.D.C. Sept. 19, 2023) (doing same).

*    *    *

The cross-motions for summary judgment, ECF 15; ECF 16, are both **DENIED** without prejudice as to the agency's withholdings under Exemption 4. The agency's motion, ECF 15, is **GRANTED**, and Informed Consent's, ECF 16, is **DENIED** as to the adequacy of the search.

**SO ORDERED.**

_____

JIA M. COBB
United States District Judge

Date: March 25, 2026

---

[5] Because the issue of segregability will arise down the line, the Court notes one bit of confusion the agency should consider resolving in future filings. The declarant seems to suggest that the agency reviewed the "unintelligible information [left] behind"—i.e. the nonexempt information—and concluded its "release . . . would result in . . . foreseeable harm[]." ECF 15-3 ¶ 15. That is the opposite of what the statute requires. The agency must consider "whether any portion of a document, *although exempt*, could be segregated and released without causing foreseeable harm." *Rudometkin v. United States*, 140 F.4th 480, 494 (D.C. Cir. 2025) (emphasis added).